UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | NO. 2:12-CR-34 |
| ) | |
| LESLIE ASHMORE ) | |

## REPORT AND RECOMMENDATION

Defendant is charged with being a convicted felon in possession of firearms. Count One charges him with possessing two firearms on October 7, 2011. Count Two charges him with possessing a firearm on October 20, 2011. He has filed a motion to suppress evidence of all those firearms. (Doc. 13). An evidentiary hearing was held on September 28, 2012. The motion has been referred to the magistrate judge pursuant to the standing order of this court and 28 U.S.C. § 636.

**COUNT ONE AND THE OCTOBER 7, 2011 SEIZURE**

On October 7, 2011, the Kingsport Police Department received a phone call from the management of the Super 8 Motel that a car was parked behind the motel; that the driver of that car was either asleep or passed out behind the wheel; and that the engine of the car was running. Officer Brandon Ferrell of the Kingsport Police Department responded to the scene. He saw a Buick LeSabre vehicle, with its engine running, and with a male asleep or passed out behind the wheel. Officer Ferrell said "Hey," in a "medium tone of voice," and the driver (defendant) promptly awoke. Officer Ferrell noticed that defendant's pupils were

constricted, which in his experience indicated possible drug use. He asked if defendant had a medical emergency, which defendant denied. Officer Ferrell asked defendant to step out of his car and, after he did so, Officer Ferrell patted him down for officer safety. Officer Ferrell removed a ring of keys from defendant's pocket, and on that key ring was a small silver cylinder. Officer Ferrell could tell that there was something in the cylinder because it "rattled." During the course of the pat down search, Officer Ferrell asked defendant for consent to search the car, and defendant consented.

About this time, another police officer, Officer Humphreys, arrived to assist Officer Ferrell. Officer Ferrell told Officer Humphreys that he had just obtained consent to search the car. Officer Ferrell also handed the key ring with the silver cylinder to Officer Humphreys, telling him that he needed to look inside it. Officer Humphreys did so, and found what appeared to be crack cocaine.

In the meantime, Officer Ferrell was administering a field sobriety test to defendant, the Horizontal Gaze Nystagmus test. Defendant exhibited four out of a possible six symptoms that indicate intoxication. That test notwithstanding, both Officer Ferrell and Officer Humphreys testified that defendant acted normally, gave every indication that he understood them, was cooperative, and he followed their instructions appropriately.

During his search of the passenger compartment of the car, Officer Humphreys found a single bullet and a brillo pad, (used to smoke crack cocaine) in the center console. He then searched the trunk of the car, finding therein a locked box or safe. Defendant was asked if he had a key to that lock box, and defendant said he did not. Officer Ferrell, however, had

2

noticed a key on the key ring earlier removed from defendant which looked as if it might fit the lock box. Officer Ferrell removed that key from the key ring, handed it to Officer Humphreys, and Officer Humphreys tried it on the lock box. It worked, and the box was opened. In that box were two handguns, two spoons with white residue, ammunition for both guns, and digital scales. Also discovered were several syringes in a bag of various medicine bottles which was in the trunk with the lock box.

After all this was discovered, the officers conducted another body search to defendant, finding more drug paraphernalia and a sizable amount of currency.

Defendant's argument with respect to this search is that his consent was invalid "because he was under the influence and not in a condition to give valid consent." All that can be said is that the court finds to the contrary. Both officers were extremely credible witnesses, and they are believed. The court finds that the defendant had the requisite capacity to validly consent to the search of his car, and that he did so.

Defendant next argues that even if his consent was valid, his consent did not extend to the search of the trunk of the car, and especially the contents of the lock box. As far as the search of the trunk is concerned, defendant in no way limited his consent to a discrete portion of the vehicle. A general consent to search a vehicle includes any components or containers within that vehicle. *See, e.g., United States v. Gant,* 112 F.3d 239, 242-3 (6th Cir. 1997); *United States v. Canipe*, 569 F.3d 597, 604, *et. seq.* (6th Cir. 2009). Therefore, the officers' search of the trunk of the car was within the scope of defendant's consent and valid under the Fourth Amendment.

3

The search of the locked box within the trunk stands on a different footing, however. Although a general consent to search a vehicle extends to all compartments of the vehicle and containers therein, *Gant, supra*, that consent does not extend to *locked* containers:

> Ordinarily, "general consent [to a search] permits the opening of closed *but unlocked* containers found in the place as to which consent was given." [Citation omitted; emphasis supplied].

*Gant, supra*, at 243.

Thus, defendant's general consent did not extend to the opening and inspection of the contents of the locked box in the trunk of his car. However, the lock box ultimately would have been searched in any event and the contents of that lock box discovered. By this time, defendant was under arrest for drug possession, and his vehicle would have been towed to an impound facility as per Kingsport Police Department policy. For the sake of the towing company, the contents of the vehicle, including all containers therein, would have been inventoried, and a copy of the written inventory attached to the tow ticket to minimize any potential liability of the towing company in the event the owner of the car later claimed that property in the car was missing. Therefore, even if the officers exceeded the scope of defendant's consent when they looked into the trunk of the car, and then into the lock box, that evidence ultimately would have been inevitably discovered due to the Kingsport Police Department's policy of inventorying a towed vehicle's contents, as a result of which the evidence may be properly admitted. *See, Nix v. Williams*, 467 U.S. 431 (1984).

It is recommended that defendant's motion to suppress any evidence discovered during the October 7, 2011 search of his person and car be denied.

## COUNT TWO AND THE OCTOBER 20, 2011 SEIZURE

Based upon the evidence obtained by the Kingsport Police Department on October 7, 2011, the United States Attorneys Office had obtained a criminal complaint against defendant, and a federal warrant for his arrest was issued. Special Agent Jamie Jenkins of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, along with a Swat Team from the Kingsport Police Department, orchestrated the arrest of defendant. On October 20, defendant was a passenger in a car driven by a female, Ms. Hutchins. When Hutchins' car was stopped, she was ordered out of the vehicle, and she was promptly handcuffed. Defendant, who was sitting in the front passenger seat, also was ordered to exit the vehicle through the driver's door, and he complied. He too was promptly handcuffed, and he was taken some distance away from the car. Agent Jenkins then approached defendant, identifying himself, and telling defendant that he had a federal warrant for his arrest. Then, as pertinent to this portion of defendant's motion to suppress, Agent Jenkins asked defendant, "Do you have anything dangerous or any weapons on you or in the car?" To that question defendant responded, "My wife may have a gun in the car."[1] It is important to note that Agent Jenkins had not provided defendant with his *Miranda* warnings before posing this question to defendant.

At this point, a Kingsport Police Detective, McQueen, obtained consent (from

---

[1] Hutchins was not defendant's wife, but that has no bearing on the resolution of defendant's motion.

someone) to search the car.² Thereafter, Agent Jenkins *mirandized* defendant.

The ensuing search of the car revealed a handgun beneath the driver's seat, and it is that weapon that forms the basis of the charges in Count Two against defendant.

The *Miranda* warning must be administered before a person either in custody or the functional equivalent of custody is questioned, *Miranda v. Arizona*, 384 U.S. 436 (1966). Agent Jenkins had a federal warrant for defendant's arrest, and defendant was certainly in the functional equivalent of custody when the car in which defendant was riding was stopped by the police. But if there be any doubt about that, there can be no doubt that he was in custody immediately upon his exit from the car and placed in handcuffs. As a result, *Miranda* warnings were required before he could be lawfully questioned.

It is the United States' argument that Agent Jenkins' question to defendant, although prior to the *Miranda* warning, was appropriate under the "public safety exception" to the requirement for *Miranda* warnings. The case of *New York v. Quarles*, 467 U.S. 649 (1984), created an exception to the requirement for *Miranda* warnings for questions at the scene of an arrest concerning weapons, drug use, or other matters that could affect the safety of the officers or the public. In *Quarles*, a woman reported to the police that she had been raped by a man who had a gun, and she pointed out to the police the store which the rapist had entered. The police went into the store and ultimately confronted the suspect. The officers

---

²Various Kingsport police officers were summonsed to the hearing before the magistrate judge, but McQueen was not one of them.

frisked the defendant, finding no gun, although they did find an empty shoulder holster. They then placed the suspect under arrest and handcuffed him.  Without any *Miranda* warnings, the police asked the suspect where the gun was.  The suspect told the police where he had placed it in another location in the store.  On the basis of officer and public safety, the Supreme Court held that this unwarned question was not violative of the Fifth Amendment.

Unfortunately, things are not merely so clear in the Sixth Circuit.  The United States relies on the case of *United States v. Ronayne*, 1995 WL 258137 (6th Cir. 1995), an unreported case.  In *Ronayne*, the defendant was arrested, and was handcuffed.  He was asked by the arresting officer if he was armed, and Ronayne responded that there was a gun in his jacket, which had come off in his struggle with the police.  The defendant argued to the Sixth Circuit that since he was in custody at the time he was asked if he was armed, and since he had not yet been read his *Miranda* rights, his rights under the Fifth Amendment had been violated.  The three-judge panel of the Court of Appeals gave this argument short shrift:  "The admission of the statement was not error because the agent's question falls within the public safety exception of *Quarles*."  There was no further discussion or analysis.

Twelve years later, in a much longer and reported opinion, the Sixth Circuit again addressed the public policy exception to the requirement for *Miranda* warnings.  In *United States v. Williams*, 483 F.3d 425 (6th Cir. 2007), the police had a warrant for defendant's arrest.  According to the police officers, they knocked on the door of defendant's apartment, and a man they did not recognize answered the door.  The police asked for his identification. The man said that he had identification in his pants pocket, and he turned around back into

7

the room to retrieve that identification. At that point, the police ordered the man to stop, and one of them asked if he had any weapons. The man responded that there was a gun under his bed, and then later stated that there was a gun under the mattress. The police then placed the man in handcuffs, while another officer retrieved the weapon from beneath the mattress.

The defendant's version in *Williams* was starkly different. He testified that he was sitting outside his room in a hallway when he was approached by the police officers. According to defendant's version, he was handcuffed, and *then* asked about guns in his room without first being warned of his *Miranda* rights.

In discussing the public policy exception, the Sixth Circuit panel said:

> The public safety exception applies "when officers have a reasonable belief based on articulable facts that they are in danger. *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). We evaluate the reasonableness and an officer's belief *de novo,* basing our evaluation on objective facts rather than on the officer's subjective state of mind. *Ibid*. Our evaluation takes into consideration a number of factors, which may include the known history and characteristics of the suspect, the known facts and circumstances of the alleged crime, and the facts and circumstances confronted by the officer when he undertakes the arrest. For an officer to have a reasonable belief that he is in danger, at minimum, he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it. The public safety exception applies if and only if both of those two conditions are satisfied and no other context-specific evidence rebuts the inference that the officer reasonably could have perceived a threat to public safety.

483 F.3d at 428.

The Court of Appeals in *Williams* noted that it may have been objectively reasonable to believe that the defendant had a weapon in his apartment solely because he had a history

of violent crimes, including aggravated rape and aggravated robbery, which would have satisfied the first prong of the above test. But to satisfy the second prong or condition, the court pointed out that the officer would also have had to believe that someone other than the police could have obtained access to the weapon and inflicted harm with it. If the police officers' version was correct – that the defendant was unrestrained and had turned back to his room to retrieve his identification – then the officers very well may have had an objectively reasonable fear for their safety. *Id.*, 429. On the other hand, if the defendant's version was the correct one, and that he was seated outside his room and handcuffed when he was asked about weapons, "then the officers plainly could not have had an objectively reasonable fear for their safety and the public safety exception would not apply." *Id.*

It is more than difficult to differentiate the Court of Appeals' latter illustration from the situation before this court; it is impossible. Defendant was handcuffed, and removed from the vicinity of the car. To the extent it matters, his driver also was handcuffed. Officer safety could not possibly have been a factor in asking the question that Agent Jenkins did. Under the authority of *Williams*, evidence of defendant's answer to Agent Jenkins' question must be suppressed.

Defendant's motion asks only that his answer to Agent Jenkins' question be suppressed; it did not ask that evidence of the firearm itself be suppressed. However, during oral argument on this motion, defendant's counsel orally suggested that evidence of the firearm should be suppressed as a "fruit of the poisonous tree."

There is no basis to suppress evidence of the gun. When an occupant of a vehicle is

9

lawfully arrested – defendant clearly was lawfully arrested on the basis of the federal warrant – the passenger compartment of the vehicle in which he was riding, including any containers in that vehicle may be searched without a warrant and without any further showing of probable cause. *New York v. Belton*, 453 U.S. 454 (1981). Moreover, the vehicle may be searched even if the arrestee was handcuffed and placed in a police car, *United States v. White*, 871 F.2d 41, 42 (6th Cir. 1989). Under the authority of these cases, Hutchins' vehicle could have been lawfully searched without a warrant, and with no further showing of probable cause. The firearm would have been discovered in any event. Therefore, defendant's verbal request to suppress evidence of the firearm itself should be denied, although his motion to suppress his statement subsequent to his arrest should be granted.

**CONCLUSION**

It is recommended that defendant's motion to suppress any evidence that resulted from the October 7, 2011 search of his person and car, all of which implicates Count One of the Indictment, be denied.

It is further recommended that defendant's motion to suppress his statement to Special Agent Jenkins on October 20, 2011, following his arrest, which implicates Count Two, be granted. However, defendant's verbal supplement to his motion to suppress, in which he asks that evidence of the gun itself be suppressed, should be denied.[3]

Respectfully submitted,

---

[3] Any objections to this report and recommendation must be filed within fourteen (14) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1).

10

s/Dennis H. Inman
United States Magistrate Judge