IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:12-CR-034 |
| | ) | |
| LESLIE ASHMORE | ) | |

**MEMORANDUM AND ORDER**

The defendant is charged with two counts of being a felon in possession of firearms. He has filed a motion to suppress "the evidence listed in the Indictment," which consists of two firearms discovered on October 7, 2011, and a third firearm discovered thirteen days later.

Now before the court is the October 2, 2012 report and recommendation, along with the October 11, 2012 supplemental report and recommendation (collectively, "report and recommendation"), of Chief United States Magistrate Judge Dennis H. Inman [docs. 35, 43]. The magistrate judge recommends that the defendant's motion be granted in small part but otherwise denied. The defendant objects [docs. 46] to the report and recommendation, and the government has responded [docs. 47] to those objections. A transcript of the suppression hearing has been filed [doc. 44] and has been carefully reviewed by the court.

A district court is both statutorily and constitutionally required to conduct a *de novo* review of a magistrate judge's report and recommendation. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985). However, it is necessary only to review "those portions

of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). The district court need not provide *de novo* review where objections to a report and recommendation are frivolous, conclusive, or general. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

## I.

### *Relevant Background*

On October 7, 2011, Officer Brandon Ferrell of the Kingsport Police Department responded to a call for a welfare check on a man in a car in a motel parking lot. Upon arriving, Officer Ferrell found that man (the defendant) either asleep or passed out behind the wheel of a parked car. Upon awakening him, Officer Ferrell noticed that his (the defendant's) pupils were constricted, which in the officer's experience is indicative of intoxication.[1] The defendant confirmed that he was not experiencing a medical emergency. At some point, the defendant told Officer Ferrell that he was at the motel because he and his wife were in the process of moving. The defendant could not, however, tell the officer *where* he was moving.

Under these circumstances, Officer Ferrell performed a field sobriety test, in which the defendant exhibited four of the six "clues" that are consistent with intoxication. Officer Ferrell testified that the defendant was otherwise cooperative, followed instructions,

---

[1] At the suppression hearing, Officer Ferrell acknowledged that pupils also constrict in bright light. His encounter with the defendant took place on a sunny morning.

2

and did not have slurred speech.[2]

Officer Ferrell also testified that the defendant consented to a search of his person for illegal substances. That search revealed a small metal cylinder containing crack cocaine. The defendant was then placed under arrest for possession of narcotics.

Officer Ferrell testified that during the pat-down the defendant also consented to a search of his car. Officer Humphries performed that search. In the center console was a bullet and possible drug paraphernalia. In the trunk of the car, Officer Humphries found items including a locked box. Officer Ferrell asked the defendant if he had a key to the box, and the defendant said he did not. Officer Ferrell had earlier noticed a key ring clipped to the defendant's belt loop. Officer Ferrell took that key ring, found the key to the lock box, and opened it. Among the items found inside were two firearms now charged in Count One of the indictment.

The defendant was transported to jail and his vehicle was towed. According to Officer Ferrell's testimony, the Kingsport Police Department has a standard operating procedure concerning the post-arrest towing of vehicles.

> Every vehicle towed must be inventoried. The, the contents in the vehicle must be added to the tow ticket itself. That prevents, you know - or reduces, I should say, the liability for the tow companies as far as items being missing or damaged.

[Doc. 44, p.11].

---

[2] Similarly, Officer Justin Humphries testified that the defendant was cooperative and able to follow instructions. Officer Ferrell further testified that the defendant later had no difficulty walking or following instructions when taken to jail.

On October 20, 2011, federal officers executed an arrest warrant based on the October 7 firearm possession. On October 20, the defendant was a passenger in a vehicle driven by Misty Hutchins. Agents stopped the vehicle. They ordered Ms. Hutchins out of the car, led her to the rear of the vehicle, and handcuffed her. According to the testimony of ATF Agent Jamie Jenkins, the defendant then hesitantly complied with orders to exit the car. Once outside, officers handcuffed him, took him to the rear of the vehicle, and told him they were executing a federal arrest warrant. Agent Jenkins then asked the defendant if he had a gun on his person or in the car. The defendant stated that there might be a revolver in the car belonging to his "wife."[3] Agent Jenkins testified that Director Hank McQueen then received the defendant's consent to search the vehicle.

Agent Jenkins then *Mirandized* the defendant. According to Agent Jenkins' testimony, the defendant made subsequent statements regarding the firearm and his drug use. The search of the vehicle revealed a firearm underneath the rear of the driver's seat, and that is the firearm charged in Count Two of the indictment.

*II.*

*October 7, 2011*

Initially, the defendant argues that Officer Ferrell did not have reasonable suspicion to perform a field sobriety test. Reasonable suspicion "requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably

---

[3] Ms. Hutchins is not the defendant's wife.

4

warrant the continued detention of a motorist." *Green v. Throckmorton*, 681 F.3d 853, 860 (6th Cir. 2012) (citation omitted). Reasonable suspicion requires more than a mere hunch but "falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

On one hand, Officer Ferrell conceded that a person's pupils can be constricted in daylight absent intoxication. He described the defendant as cooperative, able to follow instructions, and not exhibiting slurred speech. On the other hand, the defendant was either passed out or asleep in a vehicle in a public place. He had been in that condition long enough for someone to ask authorities to perform a welfare check. Intoxication is a possible reason why the defendant's pupils were constricted. The defendant claimed he was in the process of moving, but was unable to say where.

Considering the totality of the circumstances, the court concludes that Officer Ferrell had reasonable suspicion to perform a sobriety test. Many of the facts cited immediately above are subject to innocent explanation. However, "the question is not whether there is a possible innocent explanation for each of the factors, but whether all of them taken together give rise to reasonable suspicion that criminal activity may be afoot." *United States v. Jacob*, 377 F.3d 573, 577 (6th Cir. 2004) (citation omitted). "[A] series of seemingly innocent acts can, taken together, give rise to reasonable suspicion." *Id.*

The defendant had been passed out or asleep for some time in a public place in a running vehicle. His pupils were constricted, and he claimed to be moving but did not

know where. Based on the totality of these circumstances, reasonable suspicion supported Officer Ferrell's decision to conduct a sobriety test.

Next, the magistrate judge concluded that the defendant consented to the October 7 search of his vehicle. The magistrate judge found Officer Ferrell's testimony on this point credible, and the court does as well.

In the memorandum supporting his suppression motion, the defendant briefly argued that his consent was invalid due to intoxication. The defendant has, however, abandoned that issue in his objections to the report and recommendation. *See* 28 U.S.C. § 636(b) (it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made." ). Even if the issue had not been abandoned, having reviewed the suppression hearing testimony the court concludes that consent was freely and voluntarily given. "[I]ntoxication alone does not render consent invalid. . . . It is simply another factor to be taken in consideration when assessing the totality of the circumstances." *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010) (citation and quotation omitted). In the present case, the defendant has been consistently described as coherent, cooperative, and able to speak and walk without impairment. He was not intoxicated to the point that consent was not freely and voluntarily given.

Next, the court agrees with the magistrate judge's conclusion that the search of the locked box exceeded the scope of the consent. The defendant did not expressly

6

consent for the box to be searched, he denied having a key, and, "[o]rdinarily, general consent [to a search] permits the opening of closed *but unlocked* containers found in the place as to which consent was given." *United States v. Gant*, 112 F.3d 239, 243 (6th Cir. 1997) (emphasis added).

Nonetheless, the magistrate judge concluded that the firearms would have been inevitably discovered when the defendant's vehicle was inventoried prior to towing, and thus the evidence should not be excluded. Again, the court agrees. *See Nix v. Williams*, 467 U.S. 431, 443 (1984) ("The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation."); *United States v. Johnson*, 22 F.3d 674, 684 (6th Cir. 1994) ("[I]f the circumstances are such that the evidence would have been found in any inventory search that inevitably followed seizure of a car, the evidence could be introduced under *Nix*.").

In his objections, the defendant argues that "the police department's general inventory policy does not justify the search of the lock box. Tennessee law does not justify the search of a locked container under an inventory policy." In support of that argument, the defendant relies on *State v. Cabage*, 649 S.W.2d 589 (Tenn. 1983). That reliance is overstated.

In *Cabage*, the Supreme Court of Tennessee invalidated a warrantless inventory search of a locked container, where officers cut off the lock with bolt cutters. A key reason for that holding was that Court's observation, "We have found no case which has

7

gone so far as to allow an officer to cut or otherwise damage a locked container in order to conduct an itemized inventory of its contents." *Id.* at 592.

*Cabage* is, obviously, a *state* law case from 1983. While the *Cabage* Court in 1983 may have found no cases authorizing inventory searches of locked containers, times have changed. For example, in 1990 the *federal* Supreme Court held that a warrantless inventory search of a locked container is permissible if performed consistent with a departmental policy with respect to the opening of such containers. *Fla. v. Wells*, 495 U.S. 1, 4-5 (1990); *accord United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007) ("In order to be deemed valid, an inventory search may not be undertaken for purposes of investigation, and it must be conducted according to standard police procedures.") (citations and quotations omitted); *see also State v. Lawson*, C.C.A. No. 185, 1991 WL 105262, at *4-5 (Tenn. Ct. Crim. App. June 18, 1991) (distinguishing *Cabage* in light of the subsequent authority of *Wells*).

As noted above, Officer Ferrell testified that the Kingsport Police Department has a standard operating procedure concerning the post-arrest towing of vehicles.

> Every vehicle towed must be inventoried. The, the contents in the vehicle must be added to the tow ticket itself. That prevents, you know - or reduces, I should say, the liability for the tow companies as far as items being missing or damaged.

[Doc. 44, p.11]. The magistrate judge credited Officer Ferrell's testimony, concluding that the firearms inside the lockbox "ultimately would have been inevitably discovered due to Kingsport Police Department's policy of inventorying a towed vehicle's contents, as a result

8

of which the evidence may be properly admitted."

The present defendant has offered no persuasive argument or evidence to challenge that conclusion. *See* 28 U.S.C. § 636(b) (it is necessary only to review "those portions of the report or specified proposed findings or recommendations to which objection is made."). On multiple occasions, the Sixth Circuit has affirmed inventory searches based on officer testimony generally describing departmental inventory policy, even where the policy was not introduced into evidence, or where no written policy existed. *See, e.g., United States v. Tackett*, 486 F.3d 230, 233 (6th Cir. 2007); *United States v. Lumpkin*, 159 F.3d 983, 987-88 (6th Cir. 1998); *United States v. Thomas*, 11 F.3d 620, 628-29 (6th Cir. 1993); *United States v. Player*, 201 F. App'x 331, 334 (6th Cir. 2006).

Based on the arguments and evidence presented by the parties, the court concludes that the two firearms listed in Count One of the indictment would have been inevitably discovered on October 7, 2011, pursuant to the Kingsport Police Department's inventory policy. The defendant's motion to suppress will therefore be denied as to Count One.

*III.*

*October 20, 2011*

The United States argues that Agent Jenkins' October 20 questioning of the defendant prior to the *Miranda* warning was proper under the public safety exception. That exception allows *Miranda*-less and warrantless interrogation "when officers have a

reasonable belief based on articulable facts that they are in danger." *United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001). The reviewing court is to consider objective facts rather than the officer's subjective state of mind. *See United States v. Williams*, 483 F.3d 425, 428 (6th Cir. 2007).

> For an officer to have a reasonable belief that he is in danger, at minimum, he must have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it. The public safety exception applies if and only if both of those two conditions are satisfied and no other context-specific evidence rebuts the inference that the officer reasonably could have perceived a threat to public safety.

*Id.*

Rejecting the government's position, the magistrate judge recommends that the defendant's October 20 pre-*Miranda* statement (that the car might contain a revolver belonging to his wife) should be suppressed. The court agrees. The second public safety element is not satisfied in this case. The vehicle contained only two persons, the defendant and Ms. Hutchins, both of whom were handcuffed and standing at the rear of the vehicle before Agent Jenkins asked whether there was a gun in the car. Agent Jenkins could not have reasonably thought that either of those handcuffed persons could have at that point endangered officer or public safety by accessing the gun.

Next, the magistrate judge recommends that the discovery of the gun should not be suppressed, and the court again agrees. The magistrate judge credited Agent Jenkins' testimony that Director McQueen obtained the defendant's consent to search the vehicle.

The court, too, finds Agent Jenkins' testimony credible on this point. The firearm therefore would have been discovered irrespective of Agent Jenkins' initial *Miranda*-less questioning. That lawful discovery, pursuant to the defendant's consent, is sufficiently distinguished from the pre-*Miranda* question so as to be "purged of the primary taint." *See, e.g., Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

*IV.*

*Conclusion*

For the reasons provided herein, the court **ADOPTS** the findings of fact and conclusions of law set out in Magistrate Judge Inman's report and recommendation [docs. 35, 43]. It is **ORDERED** that the defendant's motion to suppress [doc. 13] is **GRANTED IN PART**. To that extent, the defendant's October 20, 2011 statements made prior to being *Mirandized* are suppressed. The defendant's motion to suppress is in all other respects **DENIED**, and his objections [doc. 46] are **OVERRULED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge

11